UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No.   5:25-cv-03527-MWC-E | Date: December 29, 2025 |
| Title:   Va Sang Chong v. Ernesto Santacruz, Jr. *et al.* | |

Present: The Honorable **Michelle Williams Court**, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (In Chambers) Order GRANTING Petitioners' Application for Temporary Restraining Order (Dkt. 3) and setting Order to Show Cause as to Why Preliminary Injunction Should Not Issue**

    Before the Court is Petitioner Va Sang Chong's ("Petitioner") *ex parte* application ("Application") seeking a temporary restraining order ("TRO") (1) directing his immediate release from the custody of Respondents Ernesto Santacruz Jr., Todd Lyons, Kristi Noem, the Department of Homeland Security ("DHS"), Pamela Bondi, and Fereti Semaia (collectively, "Respondents")[1] under the conditions of his prior Order of Supervision ("OSUP"), and (2) enjoining Respondents from removing Petitioner from the Central District of California and the United States pending the resolution of his Petition for Writ of Habeas Corpus. *See* Dkt. # 3 ("*App.*"). Respondents opposed the Application. *See* Dkt. # 6 ("*Opp.*").

    For the reasons set forth below, the Court **GRANTS** the Application; **ORDERS** Respondents to release Petitioner under the conditions of Petitioner's prior OSUP forthwith; and **ORDERS** Respondents not to remove Petitioner from the District during the pendency of the case.

---

[1] The Application lists Ernesto Santacruz Jr. as the Acting Director of the Los Angeles field office of Immigration and Customs Enforcement ("ICE"), Todd Lyons as the Acting Director of ICE, Kristi Noem as the Secretary of DHS, Pamela Bondi as the Attorney General of the United States, and Fereti Semaia as the Warden of the Adelanto ICE Processing Center. *See App.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.  5:25-cv-03527-MWC-E                                               Date: December 29, 2025

Title:  Va Sang Chong v. Ernesto Santacruz, Jr. *et al.*


I.  Background[2]

    Petitioner was born on September 1, 1968 in Saigon, Vietnam.  *Pet.* ¶ 36.  Petitioner was admitted to the United States on August 31, 1975 as a refugee and obtained legal permanent resident status.  *Id.*; *see App.*, Ex. B (Petitioner's Notice to Appear ("NTA")) at 3.  Petitioner adjusted his status to that of a lawful permanent resident.  *App.*, Ex. B, 3.  Petitioner has resided in the United States for approximately 50 years.  *Pet.* ¶ 37.  In the United States, Petitioner has strong family ties, including three U.S.-born children and five U.S. citizen siblings; participates in a Christian church; and has been continuously employed as a truck driver.  *Id.* ¶¶ 59–60, 62–63.

    In addition to other convictions, on May 10, 1995, Petitioner was convicted of an assault with a deadly weapon other than a firearm in violation of Cal. Penal Code § 245(a)(1).  Petitioner was sentenced to three years' probation and one year in jail.  *Pet.* ¶ 38 & Ex. D at 16 (California Criminal History Information).[3]

    Based on this conviction, DHS issued a NTA on November 14, 2001, charging Petitioner as deportable under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1227(a)(2)(A)(iii).  *Pet.* ¶ 39, Ex. B at 3.  DHS determined that, pending a final determination by the immigration judge, and in the event Petitioner was ordered removed from the United States, Petitioner was to remain in government custody until his departure is effected.  *Pet.* ¶ 39.

    On June 29, 2005, NTA, Custody of Custody Determination, and Warrant for Arrest of Alien were served with Petitioner.  *Pet.* ¶¶ 41–42, Ex. B at 4–7.

    On July 7, 2005, Petitioner was released from Eloy Detention Center on $12,000 immigration bond.  *Pet.* ¶ 43, Ex. G at 26–27.

    On August 31, 2005, Petitioner's then-counsel emailed to Vietnam Embassy asking the Embassy to issue a passport or travel documents for Petitioner.  *Pet.* ¶ 44.  The

---

[2] Unless otherwise indicated, the following factual background is derived from the Petition and/or Application.  The Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

[3] In 2021, the conviction was reduced to a misdemeanor and dismissed.  *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 5:25-cv-03527-MWC-E | Date: December 29, 2025 |
| Title: Va Sang Chong v. Ernesto Santacruz, Jr. *et al.* | |

Vietnam Embassy replied that day stating, "Deportees from the United States to Vietnam are not currently being considered for issuance of Vietnamese passports. In the absence of an agreement between the two Governments of Vietnam and the United States on deportation, the Embassy has no basis to proceed." *Id.*, Ex. F at 24.

In or around September 2005, Petitioner, through counsel, filed with the United States Citizenship and Immigration Services an I-589 Application for Asylum and for Withholding of Removal. *Id.* ¶ 45. In 2006, Petitioner's former spouse filed Form I-130 Petition for Alien Relative, and after I-130 approval, Petitioner filed Form I-485 Application to Register Permanent Residence or Adjust Status. *Id.* ¶ 46. The I-485 application was denied. *Id.*

On December 8, 2009, an immigration judge (IJ) denied all applications for relief and ordered Petitioner removed from the United States. *Id.* ¶ 47.

On December 14, 2009, Petitioner filed a Notice of Appeal from a Decision of an Immigration Judge with the Board of Immigration Appeals (BIA). *Id.* ¶ 48. On October 19, 2011, the BIA dismissed Petitioner's appeal affirming the IJ's decision. *Id.* ¶ 49.

On May 3, 2013, the $12,000 immigration bond posted on July 6, 2005 was canceled as DHS found that the conditions of the immigration bond were satisfied. *Id.* ¶ 50, Ex. H at 37–39 (Immigration Bond Cancellation Notice).

On May 3, 2013, DHS issued Petitioner a Warning for Failure to Depart, instructing him to surrender all passports, current and expired, to ICE. *Id.* ¶ 51. Petitioner has never been issued a passport by any government. *Id.* ¶¶ 51, 53. In addition, DHS Form I-217 Information for Travel Document or Passport was issued. *Id.* ¶ 51, Ex. E at 21–23.

On or about August 2, 2013, pursuant to an OSUP (Ex. C at 9), Petitioner was released under supervision because ICE had not effected his deportation or removal during the statutorily prescribed period. *Id.* ¶ 52, Ex. C at 9 (OSUP stating, "(b)ecause ICE has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large" under conditions pending removal."). The Order of Supervision imposed several conditions on Petitioner's release, including requirements to report to ICE as directed. *Id.* ¶ 52.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 5:25-cv-03527-MWC-E | Date: December 29, 2025 |
| Title: | Va Sang Chong v. Ernesto Santacruz, Jr. *et al.* | |

In 2014, after his release on OSUP, Petitioner was convicted of a misdemeanor violation of California Penal Code § 273.5(a) (corporal injury on a spouse/cohabitant). See Ex. D at 18 (California Criminal History Information). *Id.* ¶ 54.

On December 2, 2025, Petitioner attended a regularly scheduled ICE check-in as required under his Order of Supervision. *Id.* ¶ 55. Petitioner had no notice that ICE intended to revoke his release, detain him, or change his status. *Id.* Without explanation, Petitioner was detained during the check-in and has remained in immigration custody at Adelanto Detention Facility since that date. *Id.* ¶ 56. Petitioner has been given no opportunity to respond to the purported reasons for his detention. *Id.*

On December 23, 2025, Petitioner filed a petition for writ of habeas corpus, *see* Dkt. # 1, and the instant Application, *see App.*

II. Legal Standard

    a. *Ex Parte* Applications

"Circumstances justifying the issuance of an ex parte order are extremely limited." *Reno v. Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974)). "Consistent with [the Supreme Court's] overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Id.* (discussing parties' failure to provide notice under Fed. R. Civ. P. 65(b)).

In this District, *ex parte* applications are solely for extraordinary relief and are rarely justified. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). A party filing an *ex parte* application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492. "Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have." *Id.* at 493 (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.   5:25-cv-03527-MWC-E | Date: December 29, 2025 |
| Title:   Va Sang Chong v. Ernesto Santacruz, Jr. *et al.* | |

      b.  <u>Temporary Restraining Orders</u>

Federal Rule of Civil Procedure ("Rule") 65 grants district courts the power to issue injunctions and restraining orders. Issuance of a TRO, as a form of preliminary injunctive relief, is an extraordinary remedy, and the applicant for such a remedy bears the burden of proving its propriety. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In general, the showing required for a TRO and a preliminary injunction are the same. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The applicant for a TRO must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent the injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 5, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). "In the Ninth Circuit, a plaintiff may also prove a TRO is warranted by raising 'serious questions going to the merits.'" *NML Cap., Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1125 (C.D. Cal. 2011) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)). Where the non-movant is a government entity, "the third and fourth [*Winter*] factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

III.  <u>Discussion</u>

      a.  <u>*Ex Parte* Application and *Mission Power* Factors</u>

The Court finds that Petitioner has satisfied the *Mission Power* factors. Petitioner has been in custody since December 2, 2025, and avers that he has yet to receive any opportunity to contest his detention or revocation of OSUP status. *See, e.g.*, *App.* 4:16-21. If the Court heard the Application according to regularly noticed motion procedures, that would leave Petitioner detained without access to any due process for at least an additional 28 days. Though Petitioner could have sought the TRO sooner, the fact that he provided ICE time to give additional due process cannot cut against him. After weeks in continued detention without the requisite process, the Court finds *ex parte* relief warranted.

      b.  <u>Request for Release from Detention and Restoration of OSUP Status</u>

The Court has jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2241. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) ("The writ of habeas corpus historically provides a remedy to non-citizens challenging executive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 5:25-cv-03527-MWC-E | Date: December 29, 2025 |
| Title: | Va Sang Chong v. Ernesto Santacruz, Jr. *et al.* | |

detention."). The Court finds that Petitioner is entitled to a TRO ordering his release from detention on an OSUP. The Court discusses each of the *Winter* factors in turn.

### i. Likelihood of Success on the Merits

#### 1. Statutory and Regulatory Framework

"Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))). Thus, a noncitizen under an OSUP has a constitutional liberty interest in their continued release from immigration detention. *See Sun v. Santacruz*, No. EDCV-25-02198-JLS-JCx, 2025 WL 2730235, at *5–6 (C.D. Cal. Aug. 26, 2025) (finding the petitioner had a "substantial" liberty interest in "remaining out of immigration custody" pursuant to an OSUP and granting a TRO enjoining the respondents from re-detaining the petitioner without a pre-detention hearing before a neutral adjudicator); *Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *7–10 (E.D. Cal. Aug. 20, 2025) (same).

8 U.S.C. § 1231(a) governs the detention, release, and removal of noncitizens with an order of removal. Under § 1231(a), a noncitizen who has been ordered removed must be detained during the 90-day removal period. 8 U.S.C. §§ 1231(a)(1)(A), 1231(a)(2)(A). However, if a noncitizen is not removed within this period, they must be released "subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3). While certain noncitizens may be detained beyond the 90-day removal period, such noncitizens, if released, must also be subject to the same terms of supervision as under § 1231(a)(3). *Id.* § 1231(a)(6).

8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 set the terms of supervised release under 8 U.S.C. § 1231(a)(3) and 8 U.S.C. § 1231(a)(6), including the conditions and procedures under which ICE may revoke release. *See* 8 C.F.R. §§ 241.4(l), 241.13(i). First, ICE may revoke release when a noncitizen violates a condition of their OSUP. *Id.* §§ 241.4(l)(1), 241.13(i)(1). Second, ICE may revoke release when, "on account of changed

Case 5:25-cv-03527-MWC-E  Document 8  Filed 12/29/25  Page 7 of 15  Page ID #:296

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-03527-MWC-E | Date: December 29, 2025 |
|---|---|---|
| Title: | Va Sang Chong v. Ernesto Santacruz, Jr. *et al.* | |

circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Third, certain officials may exercise their discretion to revoke release. *See id.* § 241.4(l)(2).

Upon revocation of release, ICE must provide the noncitizen a copy of the decision "set[ting] forth the reasons for the continued detention." *Id.* § 241.4(d). Additionally, the noncitizen must be "notified of the reasons for revocation," *id.* § 241.4(l)(1), and afforded "an initial informal interview promptly . . . to respond to the reasons for revocation stated in the notification," *id.* § 241.13(i)(3).

### 2. *Analysis*

Petitioner has demonstrated a serious question going to the merits of his requests for a release from detention and restoration of his OSUP status.

#### a. Notice of Revocation of Release

As Petitioner identifies, after his release on supervision in 2013, the only violation of law or supervision was his conviction of a misdemeanor violation more than ten years ago, in 2014. *App.* 4:8-12. Petitioner avers he was given no notice of any violation or intent to revoke his supervision. *Id.* 4:16-21.

Respondents dispute Petitioner's contention that he received no notice. They assert that Petitioner was issued a Notice of Revocation of Release ("Revocation Notice") the same day that he was detained and attach a copy of the notice. *Opp.* 1:20-22; Dkt. # 6-1 ("*Langill Decl.*"), Ex. A (Dec. 2, 2025 Notice of Revocation of Release). The Revocation Notice states, in pertinent part, as follows:

> *ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. On 12/08/09 you were ordered removed by an immigration official and you are subject to an administrative final order of removal. It is expected that you will be removed to VIETNAM in the foreseeable future.*

*Langill Decl.*, Ex. A (italics original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 5:25-cv-03527-MWC-E | Date: December 29, 2025 |
| Title: | Va Sang Chong v. Ernesto Santacruz, Jr. *et al.* | |

Even assuming Respondents served Petitioner the Revocation Notice, which Petitioner contests, the Court finds the Revocation Notice does not satisfy the relevant regulatory requirements, because it does not explain why Respondents failed to detain Petitioner for more than 10 years following his 2014 arrest, or what circumstances changed in December 2025. Where a notice of revocation of release is unclear, confusing, or fails to identify with specificity a change in recent circumstances, a Court may deem it inadequate under 8 C.F.R. § 241.13(i)(3). *See, e.g.*, *Saengphet v. Noem*, No. 3:25-cv-2909-JES-BLM, 2025 WL 3240808, at *6–7 (S.D. Cal. Nov. 20, 2025); *J.L.R.P. v. Wofford*, No. 1:25-cv-01464-KES-SKO (HC), 2025 WL 3190589, at *7 (E.D. Cal. Nov. 14, 2025). The Revocation Notice fails to identify a change in circumstance that will allow them to now remove Petitioner to Vietnam. Therefore, Petitioner was not sufficiently put on notice for revocation of his OSUP. *See Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030590, at *5 (C.D. Cal. Sept. 12, 2025); *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) (noting that the government may not conflate "reason for removal with the reason for revocation of release").

b. Informal Interview

Petitioner also avers that Respondents never provided him an informal interview at which he could contest his detention. *See App.* 14:15-20; 8 C.F.R. § 241.13(i)(3). The only mention of an interview in detention is Respondents' averment that, "[o]n December 9, 2025, Petitioner refused to participate in an interview requested by ICE for a travel document." *Opp.* 4:16-17; *Langill Decl.* ¶ 15. It is unclear to the Court that an interview for a travel document would provide any opportunity to contest his detention. Moreover, Respondents do not dispute that the informal interview to contest his detention was not provided. Instead, they cite to cases where courts found petitioners failed to establish actionable injury stemming from the violation of the regulations. *Opp.* 9. For example, in *Ahmad v. Whitaker*, the court found no actionable injury where, unlike here, the government had already procured a travel document for the petitioner. 2018 WL 6928540, at *6 (W.D. Wash. Dec. 4, 2018), rep. & rec. adopted, 2019 WL 95571 (W.D. Wash. Jan. 3, 2019). And in *Doe v. Smith*, the court found "no apparent reason why a violation of the regulation . . . should result in release" where, unlike here, petitioner did not challenge the underlying justification for the removal order. *Doe v. Smith*, 2018 WL 4696748, at *9 (D. Mass. Oct. 1, 2018).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.   5:25-cv-03527-MWC-E | Date: December 29, 2025 |
| Title:   Va Sang Chong v. Ernesto Santacruz, Jr. *et al.* | |

"It is well-established that government agencies are required to follow their own regulations." *Delkash*, 2025 WL 2683988, at *5 (citing *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). To the extent Respondents failed to follow release revocation procedures, which they do not contest with regards to the informal interview, Petitioner's re-detention would be unlawful. *See id.* (collecting cases); *Nazarian*, 2025 WL 3236209, at *5; *Esmail*, 2025 WL 3030590, at *6–7.

For these reasons, there remains a serious question as to whether Petitioner was provided sufficient due process under 8 C.F.R. § 241.13(i)(3).

c. Likelihood of Removal

Petitioner contends that there is no significant likelihood of his removal in the reasonably foreseeable future, which requires his release. *See App.* 8–9; 8 C.F.R. § 241.13(i)(2) (stating that "[t]he Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."). Petitioner argues Vietnam has a "longstanding refusal to repatriate pre-1995 nationals like Petitioner," and that the process of obtaining travel documents from Vietnam can take upwards of 3-6 months. *App.* 10–14.

Respondents argue Petitioner's removal is imminent and reasonably foreseeable for two reasons. First, although Respondents concede that, in 2005, Vietnam refused to issue Petitioner travel documents, Petitioner's deportation is now imminent because Vietnam no longer has a blanket policy against removals. *Opp.* 1–2. Respondents cite *Trinh v. Homan* for the proposition that circumstances have changed. *See* 466 F.3d 1077 (C.D. Cal. 2020) ("The parties now agree that Vietnam does not maintain a blanket policy of refusing to repatriate pre-1995 immigrants. Instead, Vietnam now considers each request from ICE on a case-by-case basis. ICE frequently requests travel documents from Vietnam for pre-1995 immigrants, and Vietnam issues them in a non-negligible portion of cases."). Respondents assert that "[i]n recent times, it has been taking Vietnam approximately two months to issue a travel document." *Opp.* 2; *see Langill Decl.* ¶ 18. Respondents point to other recent decisions in this District where similar habeas petitions were subsequently been mooted by a petitioner's removal to Vietnam. *Opp.* 1-2, 7-8. Additionally, the Court notes Petitioner does not appear to dispute that once Vietnam issues a travel document, removal becomes significantly likely.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 5:25-cv-03527-MWC-E | Date: December 29, 2025 |
| Title: | Va Sang Chong v. Ernesto Santacruz, Jr. *et al.* | |

Nonetheless, the Court finds there remains a serious question as to whether Petitioner's removal is reasonably foreseeable. The only evidence that Respondents offer as to the foreseeability of removal is a statement from an ICE officer that, in his recent experience, the government of Vietnam is issuing travel documents for Vietnamese nationals within approximately two months of ICE requesting them. *Langill Decl.* ¶¶18. Mr. Langill does not explain the basis of his conclusion, such as how many ICE requests for Vietnamese nationals he has witnessed, nor does he address whether some of these requests were denied. Respondents also fail to establish that Petitioner is likely to be treated as Mr. Langill describes.

Respondents' primary cases do not command a different result. *Opp*. 7-8. In *Nghia Giang Nguyen v. Mark Bowen, et al.*, 5:25-cv-03109-MCS-ADS, Dkt. # 12 (C.D. Cal. Dec. 1, 2025), the court, in denying a TRO application, found the Vietnamese detainee did not demonstrate likelihood of success on the merits of his habeas petition in part because his conviction was for an aggravated felony. *Id.* 5:17-23. Thus, the reasoning that "aliens who are removable after having been convicted of an aggravated felony may be detained after the removal period," is inapposite here. *Id.*, citing 8 U.S.C. § 1227(a)(2)(A)(iii), 8 U.S.C. § 1231(a)(6). The court also noted that the petitioner's case was already under review by the Government of Vietnam to issue a travel document. *Id.* 6:16-24. Respondents argue Petitioner, while in detention, has refused to provide his biographical information to ICE so that ICE can prepare his travel document request. *Id.* 7; *Langill Decl.* ¶¶ 15-17.

Similarly, in *Hung Huu Anh Hoang v. Kristi Noem et al.*, 5:25-cv-03177-JLS-RAO, Dkt. # 10 (C.D. Cal. Dec. 4, 2025), the court, in denying a TRO application, found the Vietnamese detainee, who was self-represented, did not demonstrate likelihood of success on the merits of his habeas petition primarily because the application was insufficiently supported by evidence. *Id.* 4-5 ("Hoang's TRO Application consists of a few paragraphs relating to the legal standard for issuance of preliminary relief, and the application is unaccompanied by any supporting declaration regarding the facts."). Here, petitioner submits sufficient documentary evidence to demonstrate a serious question as to the merits of his claims. Further, the *Hoang* court did not analyze any procedural deficiencies of the notice of revocation of release, nor whether there was a change in circumstances related to respondents' ability to effectuate petitioner's removal. *See generally id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.   5:25-cv-03527-MWC-E | Date: December 29, 2025 |
| Title:   Va Sang Chong v. Ernesto Santacruz, Jr. *et al.* | |

For these reasons, the Court finds scattered instances of removal of pre-1995 Vietnamese immigrants to Vietnam do not sufficiently constitute a change in circumstances, nor do they demonstrate that removal is imminent as to Petitioner.

Second, Respondents maintain that because Petitioner has been in their custody for less than six months, he has no basis to challenge the likelihood of his removal under *Zadvydas*. *See Opp.* 5–6. To be sure, *Zadvydas* provided that a six-month detention is where the "presumption" of constitutional reasonableness ends. *See Zadvydas*, 533 U.S. at 701. But "[p]resumptively reasonable does not equate to mandatory." *Gibson v. United States*, No. 2:03-CR-2083-WFN-1, 2017 WL 10775070, at *1 (E.D. Wash. May 23, 2017); *see Rita v. United States*, 551 U.S. 338, 366 (2007) ("As the Court acknowledges . . . *presumptively* reasonable does not mean *always* reasonable; the presumption . . . must be genuinely rebuttable." (Stevens, J., concurring) (emphasis in original) (citing *id.* at 345–48)). And other courts have found release immediately necessary even where petitioners have been detained less than six months. *See, e.g.*, *Esmail*, 2025 WL 3030590, at *3, *5–6 (finding petitioner likely to succeed on merits of wrongful detention claim where immigration detainee was in custody for ten days); *Delkash*, 2025 WL 2683988, at *2 (granting petitioner's release from detention where he was in immigration custody for only two months); *see also Nazarian*, 2025 WL 3236209, at *5 (noting that "because Petitioner challenges his re-detention after already being released on an OSUP, 'ICE's own regulations [ ] place the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future.'" (quoting *Sun v. Noem*, No. 3:25-CV-02433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sep. 30, 2025))). Lastly, Respondents ignore that 8 C.F.R. § 241.13 was added after *Zadvydas*, so the *Zadvydas* Court never allowed for six-month detentions in contravention of federal regulations. *See Hassanzadeh*, 2025 WL 3306272, at *3 (explaining that "Section 241.13 was added in 2001 (in light of *Zadvydas*) and applies where the alien has provided good reason to believe there is no significant likelihood of removal . . . in the reasonably foreseeable future." (cleaned up)).

Finally, Respondents assert that, even if the Court accepts that Petitioner's detainment was procedurally inadequate, the proper remedy is not Petitioner's release, but an order "to remedy the specific procedural deficiency that might be established." *See Opp.* 9. Here, Petitioner has raised a serious question going to the merits with respect to three different procedural deficiencies: proper notice as to the reason for revocation of his release, an informal interview where he could contest his detention, and likelihood of his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 5:25-cv-03527-MWC-E | Date: December 29, 2025 |
| Title: | Va Sang Chong v. Ernesto Santacruz, Jr. *et al.* | |

removal in the reasonably foreseeable future. These deficiencies implicate all stages of his re-detention, and providing these protections after Respondents detained already Petitioner would not cure his initial detention lacking the requisite due process. Moreover, Petitioner's release is necessary to return him to the status quo, or "the last uncontested status which proceeded the pending controversy." *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2026) (cleaned up) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)); *Nazarian*, 2025 WL 3236209, at *7 ("While Respondents argue the proper relief is remedying the specific procedural defects rather than releasing Petitioner from custody, . . . the Court rejects this argument. Here, Petitioner's release is necessary to return him to the status quo."); *Esmail*, 2025 WL 3030590, at *6 ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Accordingly, the Court finds that Petitioner has raised serious questions going to the merits on his request for release from detention and restoration of OSUP status. *See Hassanzadeh v. Warden, Desert View Facility*, No. ED CV 25-2113-DMG (MAAx), 2025 WL 3306272, at *5 (C.D. Cal. Nov. 25, 2025); *Luu v. Bowen*, No. 5:25-CV-03145-MEMF-SP, 2025 WL 3552298, at *9 (C.D. Cal. Dec. 11, 2025).

### ii. Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Court finds that Petitioner would be immediately and irreparably harmed by his continued deprivation of liberty without requisite due process under 8 C.F.R. § 241.13 and 8 C.F.R. § 241.4. *See Hashemi v. Noem*, No. 2:25-cv-10335-HDV-SR, 2025 WL 3468694, at *7 (C.D. Cal. Nov. 19, 2025); *Delkash*, 2025 WL 2683988, at *6; *see also Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017) (finding irreparable harm was likely to result from government's policy of not considering financial ability to pay immigration bonds); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144–45 (9th Cir. 2013) (finding irreparable harm was likely to result from government's reading of immigration detention statutes as not requiring a bond hearing for noncitizens subject to prolonged detention). "Moreover, the Ninth Circuit has recognized

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.   5:25-cv-03527-MWC-E | Date: December 29, 2025 |
| Title:   Va Sang Chong v. Ernesto Santacruz, Jr. *et al.* | |

'the irreparable harms imposed on anyone subject to immigration detention,' including 'subpar medical and psychiatric care in ICE detention facilities.'" *Delkash*, 2025 WL 2683988, at *6 (quoting *Hernandez*, 872 F.3d at 999).

Accordingly, this factor weighs in favor of granting the TRO ordering Petitioner's release from detention and restoration of his OSUP status.

### iii.  Balance of Equities and Public Interest

As detailed above, the last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). As to Respondents' interests, there is a compelling interest in the enforcement of the nation's immigration laws. *See Medina v. U.S. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237, 1252 (W.D. Wash. 2018). Still, the balance of equities and the public interest factors tip in favor of Petitioner because he is challenging Respondents' violation of federal law. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law." (citations omitted)); *Esmail*, 2025 WL 3030590, at *9; *Luu*, 2025 WL 3552298, at *10 ("'Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.'" (quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005))); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (noting that the government "cannot suffer harm from an injunction that merely ends an unlawful practice").

Accordingly, and considering the other factors that the Court has examined herein, Petitioner is entitled to immediate release from detention and restoration of his OSUP status.

### c.  Request to Enjoin Removal Outside District and United States During Pendency of Proceedings

Petitioner requests the Court enjoin Respondents from removing Petitioner from the United States, and the Central District of California, pending resolution of this case. *App.* 1. If Respondents removed Petitioner from the country—or even from this District—during the pendency of these proceedings, that would frustrate the Court's ability to provide the relief it now grants. It is within the Court's power to grant incidental relief

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 5:25-cv-03527-MWC-E | Date: December 29, 2025 |
| Title: | Va Sang Chong v. Ernesto Santacruz, Jr. *et al.* | |

necessary to effectuate its order. *See Dominguez v. Dep't of Mental Health*, No. CIV S-06-0301 GEB CKD P, 2012 WL 1576001, at *3 (E.D. Cal. May 3, 2012) ("A federal court may order measures ancillary to the appropriate prospective relief." (citing *Edelman v. Jordan*, 415 U.S. 651, 668 (1974))).

Accordingly, the request is **GRANTED**, and the Court **ENJOINS** Respondents from removing Petitioner from this District pending resolution of Petitioner's habeas petition.

IV.  Bond Requirement

Rule 65 notes that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original)). "In particular, the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (cleaned up). "That is, the mandatory language of Rule 65(c) does not 'absolve[] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond.'" *Vaskanyan*, 2025 WL 2014208, at *8 (quoting *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003)).

Since the Court is ordering that Respondents follow the governing law, bond is unnecessary. *See Swan v. Tanjuakio*, No. 21-00052 JMS-KJM, 2021 WL 1794756, at *8 (D. Haw. May 5, 2021) ("The court is simply requiring [defendant] to follow the law. No bond is required." (footnote omitted)); *Hassanzadeh*, 2025 WL 3306272, at *6 (ruling that bond was unnecessary where the court ordered respondents to release immigration detainee from custody and follow the governing law).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No.  5:25-cv-03527-MWC-E | Date: December 29, 2025 |
| Title:  Va Sang Chong v. Ernesto Santacruz, Jr. *et al.* | |

V.  Conclusion

For the foregoing reasons, the Court **GRANTS** the Application and **ORDERS** as follows:

1. Respondents must release Petitioner immediately under an Order of Supervision.
2. Respondents may not transfer Petitioner out of this District during the pendency of these proceedings.

The Court **ORDERS** Respondents to show cause, in writing, no later than 7 days after this Order as to why a preliminary injunction should not issue. Petitioner may file a response no later than 7 days after Respondents' filing.

**IT IS SO ORDERED.**

: 
**Initials of Preparer**  TJ